FILED
MISSOULA, MT

2007 JAN 22 AM 8 53

PATRICK E. DUFFY
BY
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

| | | |
|---|---|---|
| BUCKY SMITH, | ) | Cause No. CV 06-115-M-DWM-JCL |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER and |
| vs. | ) | FINDINGS AND RECOMMENDATION |
| | ) | OF U.S. MAGISTRATE JUDGE |
| JUDY MARTZ; MIKE McGRATH; | ) | |
| MINERAL COUNTY ATTORNEY'S | ) | |
| OFFICE; MIKE DONOVAN; DOES I-X, | ) | |
| | ) | |
| Defendants. | ) | |

On July 20, 2006, Plaintiff Bucky Smith moved to proceed in forma pauperis with this action under 42 U.S.C. § 1983. The motion was granted in a separate order. Smith is a state prisoner proceeding pro se.

**I. Preliminary Screening**

Pursuant to the federal statutes governing proceedings in forma pauperis and proceedings by prisoners, federal courts must engage in a preliminary screening of cases to assess the merits of the claims. 28 U.S.C. §§ 1915(e)(2), 1915A(a); 42 U.S.C. § 1997e(c)(1); *Lopez v. Smith*, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc). The court must identify cognizable claims, or dismiss the complaint,

or any portion of the complaint, if the complaint is frivolous, malicious, or fails to state a claim upon which relief can be granted, or if the complaint seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A(b); 42 U.S.C. § 1997e(c)(1).

Although the statute requires a dismissal for the reasons stated, it does not deprive the district court of its discretion to grant or deny leave to amend. *Lopez*, 203 F.3d at 1127. The court can decline to grant leave to amend if "it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). Leave to amend is liberally granted to pro se litigants unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987) (citing *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980)). Additionally, the courts must liberally construe pro se pleadings. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

## II. Smith's Allegations

Smith was adjudicated a delinquent youth in June 1997, when he was fifteen years old, based on a sexual assault. He states that the prosecution was conducted by Mineral County Attorney Donovan, with whom Smith had "a pre-existing adversarial relationship." Compl. (doc. 1) at 3, ¶ 7. Smith was sentenced as a juvenile to a term of probation.

On December 20, 2000, Smith failed a polygraph examination. Donovan had a warrant issued for his arrest, and Smith was arrested three days later. In June 2001, Smith's probation was revoked and he was sentenced to prison until he reached the age of twenty-five.

Sometime later, Smith filed a petition for writ of habeas corpus in the Montana Supreme

Court. In August 2003, the Montana Supreme Court ruled that Smith's incarceration was unlawful and ordered his release.[1]

As Smith was being released from Montana State Prison, he was again arrested on a warrant that had been sought by Donovan. On August 21, 2003, Smith posted bond and was released from custody on that warrant. *See* Compl. at 3-4, ¶¶ 7-16.

Smith remains incarcerated on a probation violation in connection with the sexual assault he committed in 1997. *See* CON Network, http://app.mt.gov.

Smith alleges a cause of action under 42 U.S.C. § 1983 and asserts false arrest, false imprisonment, "detention under unlawful pretense," malicious prosecution, official misconduct, and violation of the Privileges and Immunities Clause. Compl. at 4-8. He also asserts that he was deprived of his liberty interests. *Id.* at 8. For his relief, he seeks compensatory and punitive damages, costs of suit including attorney fees, and other relief to which he may be entitled. *Id.* at 4-9.

**III. Analysis**

For better or worse, our judicial system does not provide redress for all injuries that might be caused by it. Smith cannot state a claim on which relief may be granted.

### A. Martz and McGrath

A person cannot be liable under 42 U.S.C. § 1983 unless he or she causes or personally participates in causing a deprivation of plaintiff's protected rights. *See, e.g., Johnson v. Duffy*, 588

---

[1] The opinion is not available to this Court. Smith's Complaint avers that "Montana state law prescribes for the transfer of juvenile probationees to be remanded to adult probation before being convicted to a prison sentence." Compl. at 3, ¶ 9. Presumably that was the basis of the Montana Supreme Court's ruling that he be released. *See also* Br. of Amicus Curiae at 16, *Gratzer v. Mahoney*, No. 05-075 (Mont. filed July 29, 2005).

ORDER and FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 3

F.2d 740, 743-44 (9th Cir. 1978); *Stevenson v. Koskey*, 877 F.2d 1435, 1438-39 (9th Cir. 1989).

Smith alleges that Martz, as Governor, was "the highest authority for enforcement of state laws" and that McGrath, as Attorney General, was "responsible for the supervision and conduct of all county attorneys within the State." Compl. at 2, ¶¶ 2-3. Even assuming that those questionable allegations are true, Smith fails to state a claim against either Martz or McGrath. There is no *respondeat superior*[2] liability under 42 U.S.C. § 1983. *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 691 (1978). That is, a person cannot be liable solely because an employee or supervisee under that person's chain of command violates a plaintiff's civil rights. Smith's Complaint alleges that Martz and McGrath are liable solely because of their positions of authority. They must be dismissed.

## B. Prosecutorial Immunity

As a prosecutor, Donovan is absolutely immune from any liability that might otherwise arise from acts he commits in close connection with judicial proceedings. *See, e.g., Fry v. Melaragno*, 939 F.2d 832, 837 (9th Cir. 1991); *Demery v. Kupperman*, 735 F.2d 1139, 1144 (9th Cir. 1984). The Supreme Court long ago decided that it is more important for prosecutors to have the freedom to make litigation decisions without fear of liability than it is to provide a remedy to persons who are unlawfully incarcerated as a result of prosecutor's decisions, even if those decisions are made in bad faith. *See Imbler v. Pachtman*, 424 U.S. 409, 427 (1976) ("To be sure, this immunity does leave the genuinely wronged defendant without civil redress . . . . But the alternative of [limiting] a prosecutor's immunity would disserve the broader public interest.").

---

[2] The phrase means "let the superior make answer." Black's Law Dictionary 1313 (7th ed. 1999).

ORDER and FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 4

Decisions as to whether to file a petition to revoke probation,[3] as well as statements made, positions taken, and sanctions requested in the course of litigating the petition, are clearly made within the "judicial phase." *Compare, e.g., Imbler*, 424 U.S. at 431 & n.33 (recognizing absolute immunity of prosecutor in initiating and presenting the State's case), *with Burns v. Reed*, 500 U.S. 478, 495 (1991) (declining to recognize absolute immunity of prosecutor in advising police about propriety of hypnotizing suspect and about existence of probable cause to arrest). Thus, Smith cannot state a claim as to any actions taken by Donovan in the judicial process of revoking Smith's probation.

To the extent Smith alleges that Donovan took any action not intimately connected with the judicial phase of the revocation, that allegation is dealt with in the next section.

## C. Statute of Limitations

Smith alleges that he was unlawfully incarcerated for six months before his probation was judicially revoked and for a little more than two years after his probation was judicially revoked.

As to the latter period, the three-year statute of limitations[4] did not begin to run until the day after the Montana Supreme Court granted Smith's petition for writ of habeas corpus. *See Heck v. Humphrey*, 512 U.S. 477, 489-90 (1994) ("Just as a cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor, so also a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue

---

[3] *See also Albright v. Oliver*, 510 U.S. 266, 274 (1994) ("[t]he accused is not 'entitled to judicial oversight or review of the decision to prosecute.'") (quoting *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975)).

[4] *See Wilson v. Garcia*, 471 U.S. 261, 276 (1985); Mont. Code Ann. § 27-2-204(1) (2003).

ORDER and FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 5

until the conviction or sentence has been invalidated.") (internal citations omitted). Although Smith's allegations relating to the latter time period are not time-barred, he cannot proceed against Donovan, who has prosecutorial immunity, or against any of the other defendants he names, for the reasons explained elsewhere.

However, as to the six-month period between Smith's arrest on December 23, 2000, and the revocation of his probation in June 2001, the statute of limitations bars any claim that might arise. At one point, Smith alleges that Donovan issued an arrest warrant. *See* Compl. at 7, ¶ 40. County attorneys do not have the authority under state law to "issue" warrants, and they do not have prosecutorial immunity if they do so.[5] If Donovan signed an arrest warrant and Smith was arrested on Donovan's authority rather than on the authority of a judge or probation officer, Smith's arrest was illegal, and his cause of action under 42 U.S.C. § 1983 accrued at that time. The *Heck* rule postpones the accrual of a cause of action only where the validity of a conviction is at stake. The validity of Smith's arrest is a matter distinct from the validity of the revocation of his probation. A court could have decided that Smith's arrest was invalid without undermining the validity of the revocation. *Heck* does not apply to Smith's pre-revocation detention.

Consequently, the statute of limitations as to Smith's pre-revocation detention began to run on December 24, 2000, and it expired on December 24, 2003. Smith did not file his Complaint until July 20, 2006. To the extent Smith alleges that Donovan took any action not intimately connected

---

[5] In other places in the Complaint Smith says that Donovan used his "discretionary authority to have a warrant issued" or "sought" a warrant. *Id.* at 3, ¶ 10; 4, ¶ 15. Moreover, Smith was entitled to counsel throughout the revocation proceedings. It is unlikely that Smith was detained pending a revocation hearing solely on Donovan's authority. For the sake of argument, however, in this section of the Findings and Recommendation, the Court will assume the truth of Smith's contention that Donovan issued an arrest warrant.

ORDER and FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 6

with the judicial phase of the revocation, that allegation is time-barred and should be dismissed.

### D. Mineral County Attorney's Office

The Mineral County Attorney's Office is not an entity capable of being sued. It should be dismissed.

To the extent Smith intended to name Mineral County as a defendant, a county's liability depends on whether an authorized decision-maker for the county (a) intentionally deprived the plaintiff of a federally protected right, or (b) knew or should have known of a policy, practice, or custom in the county that violated the plaintiff's rights.[6] *Board of County Comm'rs v. Brown*, 520 U.S. 397, 405 (1998); *McMillian v. Monroe County*, 520 U.S. at 781, 785 (1997).

Donovan is the only person identified in Smith's Complaint who could be an authorized decision-maker for the county. However, as set forth above, any allegations concerning the period of time before Smith's probation was judicially revoked are time-barred.

Allegations concerning events at or following the revocation hearing are not causally linked to county policy but to judicial action, and so cannot give rise to a claim against the county under 42 U.S.C. § 1983.[7]

------

[6] There is another means of establishing municipal liability. *See, e.g.*, *Gibson v. County of Washoe*, 290 F.3d 1175, 1186, 1194-95 (9th Cir. 2002). However, the fact that Smith alleges wrongs arising from a criminal prosecution and a probation revocation preclude the involvement of any county employee who might play the role described in *Gibson*.

[7] Montana district court judges are not county employees or county decision-makers. In *Greater Los Angeles Council on Deafness, Inc. v. Zolin*, 812 F.2d 1103, 1110 (9th Cir. 1987), the Ninth Circuit determined that, "[a]lthough the County does pay most of the Superior Court's bills," county courts in California are nonetheless "arms of the State." The California Constitution and California case law so provide. A California county court "derives its power from the State and is ultimately regulated by the State." Finally, "[j]udges are appointed by California's governor, and their salaries are established and paid by the State." *Id.* at 1110.

ORDER and FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 7

Smith alleges that up to ten "John Doe" defendants were "responsible for the damages suffered by Plaintiff." Compl. at 2, ¶ 6. The "Doe" device permits a plaintiff to name and describe the actions of persons who were involved in his case but whose true identity is not known to him. *See* Fed. R. Civ. P. 15(c)(3). Smith uses the device in an attempt to speculate that other persons may have been involved. He does not describe any acts by unidentified persons.

At any rate, as set forth above, the law simply does not provide redress for every injury. Given the facts alleged by Smith, it is clear that the law does not permit him to obtain relief other than the release ordered by the Montana Supreme Court in August 2003.

### E. Supplemental Jurisdiction

Smith appears to allege only one cause of action, a claim under 42 U.S.C. § 1983. *See* Compl. at 4-8, ¶¶ 19, 24, 29, 34, 39, 44. However, to the extent the Complaint might be construed to raise state-law claims as well, *see id.* ¶¶ 20, 25, 30, 35, 40, the Court should decline to exercise supplemental jurisdiction. 28 U.S.C. § 1367(c) provides:

---

While Montana's district court judges are elected, not appointed by the Governor, Montana's governmental structure is identical to California's in every other respect. A Montana county may pay many of the district court's bills, *see, e.g.*, Mont. Code Ann. § 7-6-2511 (2001), but the State establishes and pays district judges' salaries. *See* Mont. Code Ann. § 3-5-211(1) (2001). The Montana Constitution invests "[t]he judicial power of the state in one supreme court, district courts, justice courts, and such other courts as may be provided by law." Mont. Const. Art. 7, § 1. It entrusts the creation of judicial districts and establishment of the number of judges in each district to the Montana Legislature. *See id.* § 6. It also sets the terms of office for district judges. *Id.* § 7. As the court said of the California courts in *Zolin*, a district court's "geographical location within any particular county cannot change the fact that the court derives its power from the State and is ultimately regulated by the State." 812 F.2d at 1110.

Montana's district courts are undoubtedly an "arm of the State" of Montana. 42 U.S.C. § 1983 does not apply to States or to arms of the State, so such entities are not "persons" subject to suit within the meaning of 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Quern v. Jordan*, 440 U.S. 332, 338-45 (1979) (holding that § 1983 does not override a State's Eleventh Amendment immunity); *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001).

ORDER and FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 8

The district courts may decline to exercise supplemental jurisdiction . . . if--

    (1)     the claim raises a novel or complex issue of State law,

    (2)     the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

    (3)     the district court has dismissed all claims over which it has original jurisdiction, or

    (4)     in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

The Court has concluded and will recommend that Smith's claims under federal law should be dismissed. Therefore, subsection (1) of the statute applies. Additionally, a few of Smith's claims raise novel questions under Montana law. For example, some members of the Montana Supreme Court have indicated a willingness to reconsider the parameters of official immunities from suit. *See, e.g., Massee v. Thompson*, 90 P.3d 394, 407-10, ¶¶ 65-78 (Mont. 2004) (Nelson, J., dissenting); *Rahrer v. Board of Psychologists*, 993 P.2d 680, 684-88, ¶¶ 28-44 (Mont. 2000) (Nelson, J., specially concurring). Prosecutorial immunity does not appear to be questioned by these decisions, *see, e.g., Smith v. Butte-Silver Bow County*, 878 P.2d 870, 880-83 (Mont. 1994) (Nelson, J., concurring), and that doctrine is the largest barrier to Smith's proposed suit. Nonetheless, not all of the defendants named by Smith are natural persons. "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).

Consequently, the Court should decline supplemental jurisdiction over Smith's state-law tort claims. *See Executive Software N. Am., Inc. v. United States Dist. Court*, 24 F.3d 1545, 1557 n.9 (9th Cir. 1994) (interpreting 28 U.S.C. § 1367(c)(1)-(3) as "describing circumstances that ordinarily present 'compelling' reasons in and of themselves for remanding pendent claims."); 28 U.S.C. § 1367(d).

ORDER and FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 9

**IV. Amendment and Motion for Counsel**

The Court has considered whether Smith might be able to amend his petition to state a claim. However, the heart of Smith's Complaint is that Donovan prosecuted him in bad faith and permitted him to remain incarcerated for two years when he should not have been incarcerated. Smith cannot avoid the legal reality that actions Donovan took before a judge revoked Smith's probation are time-barred, and he cannot avoid the legal reality that Donovan is immune from suit for actions he took in close connection with the judicial phase of Smith's revocation. Once the court made the decision to revoke, Smith's sentence was carried out in accordance with due process of law. Under these circumstances, Smith cannot maintain a cause of action. Amendment would be futile.

For the same reason, Smith is not entitled to the appointment of counsel. Certainly, the reasons that Smith cannot state a claim are complex and difficult to understand. However, they are also well-established in the law and binding on this Court. There is no possibility of success on the merits. Smith's motion for counsel must be denied.

Based on the foregoing, the Court enters the following:

**ORDER**

Smith's motion for the appointment of counsel (doc. 3) is DENIED.

The Court also enters the following:

**RECOMMENDATION**

Smith's Complaint (doc. 1) should be DISMISSED WITH PREJUDICE and the docket should reflect that Smith's filing of this action counts as one strike against him for failure to state

ORDER and FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 10

a claim on which relief may be granted, pursuant to 28 U.S.C. § 1915(g).

The Clerk of Court shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the Plaintiff. Plaintiff is advised that, pursuant to 28 U.S.C. § 636, any objections to these findings must be filed or delivered to prison authorities for mailing within twenty (20) calendar days[8] after the entry date reflected on the Notice of Electronic Filing, or objection is waived.

Plaintiff must immediately inform the Court of any change in his mailing address.

DATED this 19th day of January, 2007.

Jeremiah C. Lynch
United States Magistrate Judge

---

[8] In prisoner cases, this Court extends the time to object to twenty days in order to take into account the Supreme Court's ruling in *Houston v. Lack*, 487 U.S. 266, 270-71 (1988), and the somewhat greater mailing time that is involved in sending documents into and out of a prison facility.

ORDER and FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 11